Barbara J. Forde, #013220
Barbara J. Forde, P.L.C.
20247 N. 86th Street
Scottsdale, AZ  85255
bforde@cox.net
(602) 721-3177
Plaintiff in Propria Persona

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| BARBARA J. FORDE, a married woman dealing with her sole and separate property,<br><br>  Plaintiff,<br><br>v.<br><br>FIRST HORIZON HOME LOAN CORPORATION, a Kansas Corporation; METLIFE HOME LOANS, a division of METLIFE BANK, NA; THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, as Trustee for the HOLDERS OF THE CERTIFICATES, FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES FH05-FA8; FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK NATIONAL ASSOCIATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; QUALITY LOAN SERVICE, CORPORATION, a California Corporation; JOHN AND JANE DOES 1-15, XYZ CORPORATIONS 1-15; ABC LIMITED LIABILITY COMPANIES 1-15; and 123 BANKING ASSOCIATIONS 1-15,<br><br>  Defendants. | No. CV 10-01922-PHX-MEA<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**<br><br>**ORAL ARGUMENT REQUESTED** |

# I. INTRODUCTION.

Pursuant to 28 U.S.C. § 1447(c) and other applicable law, Plaintiff Barbara J. Forde hereby files her Reply in Support of Motion to Remand this case to the Maricopa County Superior Court. Because no Defendant has provided a compelling argument against remand based on abstention, Plaintiff's forum choice should be honored and this matter remanded to the State Court.

# II. MEMORANDUM OF POINTS AND AUTHORITIES.

## A. <u>Overview</u>.

Plaintiff initiated this action against the Defendants on August 3, 2010, asserting eight different claims for relief, including a request that the documents *signed by unauthorized individuals* for Quality Loan Service ("QLS") and other entities be declared illegal and void, for fraud, consumer fraud, breach of the duty of good faith and fair dealing, negligent performance of undertaking, and other claims. Since the time for answering, the Defendants filed a Motion to Dismiss, removed the case to Federal Court, and filed a Motion to Strike the entire complaint. For her part, Plaintiff has filed a Motion to Remand based on a procedural defect in the removal procedures[1] and on clear federal law in favor of leaving unsettled areas of state law to the State Courts.

Although not relevant to any issue before the Court, the MetLife Defendants in their pleadings take every opportunity to attack Plaintiff and her law practice. The MetLife Defendants imply that a solo practice, rather than one out of a massive corporate law firm, somehow reduces the quality of the claims being asserted, or the respect or attention the litigant deserves. Their calling her law practice a "cottage industry"[2] is their most recent display of this smug attitude.

In each pleading, though not relevant, the MetLife Defendants give each fact related to the procedural background of this matter. In each instance the MetLife Defendants feel compelled to

---

[1] Plaintiff hereby withdraws her argument that the case should be remanded based on a procedural defect in removal pleadings.
[2] *See* Response of Bank Defendants to Plaintiff's Motion to Remand (the "Response") at 8-9.

point out the fact that the Plaintiff received a temporary restraining order without notice. The implication each time is that Plaintiff somehow engaged in improper tactics. Most recently, in their Response, the MetLife Defendants go so far as to imply that Plaintiff was aware, at the time she obtained the TRO, that Mr. McNichol was representing the MetLife Defendants; an allegation which is sheer nonsense unsupported by fact.[3] The MetLife Defendants, being represented by a massive corporate law firm, should certainly be aware that there are Arizona Rules of Civil Procedure and case law which fully support the relief she requested, *and obtained*, from a Superior Court Judge then assigned to the matter.

One final irrelevant fact on which the MetLife Defendants continue to dwell, bears mention. These Defendants repeat that Plaintiff named "First Horizon Home Loan Corporation" as a defendant, but claim that the entity has been defunct since May of 2007. *See* Response at 4 n. 2. The MetLife Defendants claim that it "merged into" First Tennessee Bank National Association. Until Plaintiff filed her lawsuit, she of course had no knowledge of, or idea that, this allegedly happened. This is a perfect example of the obfuscation in which the MetLife Defendants engage. The Note and Deed of Trust signed by Plaintiff showed the lender as First Horizon Home Loan Corporation. No documents have ever been provided showing to what entity the Note and Deed of Trust were transferred in 2007, or any other time prior to the MetLife Defendants' improper, after-the-fact attempt to document matters when they initiated foreclosure.

**B.    MetLife Defendants Have No Standing to Argue What Is Essentially A Motion to Dismiss on Behalf of Quality Loan Service**.

In their Response, the MetLife Defendants spend over a page arguing Defendant QLS' Motion to Dismiss for QLS. This is completely improper; the MetLife Defendants have no standing to make any such argument. The MetLife Defendants argue that Plaintiff's claims against QLS are "fraudulent" and baldly assert that "Quality merely handled the mechanical foreclosure process under the Loan…." *See* Response at 6-7. These assertions are odd, indeed, in

---

[3]  *See* Response at 3.

the face of national confessions by lending institutions that tens of thousands of "robosigned" affidavits for foreclosures were not valid, while foreclosure moratoria are taking place, and in the face of Arizona's own Attorney General launching an investigation into fraudulent document signing in the context of mortgage foreclosures in our State. *See* Office of the Attorney General Terry Goddard Press Release, dated October 13, 2010.[4]

An assertion that QLS has only a "nominal status" in the face of Complaint allegations of fraudulently signed documents is completely groundless. Plaintiff's claims against QLS' robosigners, and MetLife Defendants' business practices, are precisely the type of claims which have been ignored and discounted by so many lenders and servicers, as well as the Courts. The Ohio District Court highlighted the fact that the lending institutions have been "unchallenged by underfinanced opponents" on the issue of producing proof of standing, i.e., entitlement to enforce and recover on the note and deed of trust on a residence:[5]

> The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate. The Court will illustrate in simple terms its decision:
>
> "Fluidity of the market"-"X" dollars, "contractual arrangements between institutions and counsel"-"X" dollars, "purchasing mortgages in bulk and securitizing"-"X" dollars, "rush to file, slow to record after judgment"-"X" dollars, "the jurisdictional integrity of the United States District Court"-"Priceless."

*In re Foreclosure Cases,* 2007 WL 3232430 at *3 n. 3 (N.D.Ohio). The Court dismissed all the lawsuits filed by the lenders and servicers as they were unable to prove standing. Plaintiff does not cite *In re Foreclosure Cases* to argue that it is controlling precedent here. Rather, Plaintiff's

---

[4] Pursuant to L.R.Civ. 7.1(d)(3), a copy of the Press Release has not been attached to this original Reply. A copy has been attached to the copies sent directly to Magistrate Judge Aspey and the parties in this matter. Reference may also be made to http://www.azag.gov.

[5] Plaintiff is well aware that Ohio is a judicial foreclosure state. The words of the Ohio District Court are nevertheless instructive regarding common foreclosure practices pursued by lenders and their servicers.

purpose is to demonstrate that long-standing practice by lenders and servicers does not, in and of itself, make that practice legal.  Whether the claims against QLS will stand, are state law issues which are currently being directly confronted by elected State Legal Officials.  In any event, argument regarding these issues has no place in Plaintiff's Motion to Remand, and MetLife's discussion of the issue should be disregarded.

**C.   The MetLife Defendants Completely Miss the Mark with Their Arguments Against Remand; Abstention is Appropriate Because No State Court Has Decided These Critically Important Issues of First Impression in Arizona.**

It must be remembered that the Ninth Circuit strictly construes the removal statute *against* removal jurisdiction.  *Gaus v. Miles, Inc.,* 980 F.2d 564, 565 (9th Cir. 1992).  As quoted by the MetLife Defendants, abstention is appropriate where "repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813-814, 96 S.Ct. 1236, 1244 (1976).

The MetLife Defendants cite case law which states that the mere existence of a state process, or difficult, complex or uncertain issues of state law do not, alone, mandate abstention. *See* Response at 8.  While these assertions are true, they do not prevent remand here.  The MetLife Defendants miss the point, in citing the cases they do.

For instance, the United States Supreme Court found remand not necessary in a matter arising out of the Florida courts, because several Florida Supreme Court cases already addressed the issue at bar.  *Meredith v. City of Winter Haven*, 320 U.S. 228, 232, 64 S.Ct. 7, 10 (1943).  Interestingly, the Supreme Court closed with, "[e]ven though our decisions could not finally settle the questions of state law involved, they did adjudicate the rights of the parties with the aid of such light as was afforded by the materials for decision at hand…." *Id.* at 237-38; 64 S.Ct. at 12.  This Court does not have the "aid" of "light" from the State Court; there is none.  Even if there were, according to the United States Supreme Court, the decision "could not finally settle the questions of state law involved."  Remand is needed, to allow the State Courts of Arizona to decide these issues of first impression.

Another case cited by the MetLife Defendants further supports Plaintiff's Motion. *Tomiyasu v. Golden*, 358 F.2d 651 (9th Cir. 1966). At issue before the Ninth Circuit was a claim by two siblings that their father had listed them as Plaintiffs in a lawsuit, totally unbeknownst to them, which suit he lost on the two occasions that he filed. *Id.* at 653-54. The Federal Court was called on to decide the third case filed by the children. Because the essence of the claim was misuse of the process of the courts of Nevada, and the misleading of those courts, the Ninth Circuit found that the exercise of jurisdiction "would constitute an unwarranted intermeddling in the procedures of the Nevada courts." *Id.* at 655. The Ninth Circuit concluded that the issue raised "should be left to those preeminently competent to answer it." *Id.*

Here, "those preeminently competent" to decide these new issues of state law are the State Courts of Arizona. Plaintiff's choice of forum should be honored.

Plaintiff's Remand Motion rests on the *fact* that the Arizona State Courts have not ruled on the issues now before this Court, in any published opinion. The MetLife Defendants assert that "Plaintiff reveals too much" in her Motion. *See* Response at 7. Presumably, the MetLife Defendants believe that Plaintiff's statement that the court dockets are filled with lawsuits against lenders and servicers by borrowers, somehow damages her argument. The MetLife Defendants also confirm that challenges to loans such as Plaintiff's are "far from unique" and are "becoming commonplace." *See* Response at 10. This is hardly a surprise; Attorney General Goddard agrees that fraudulent servicer and lender practices are widespread in our State. *See infra.* In fact, the volume of cases now pending cements the conclusion that these important first impression issues requiring interpretation of Arizona law are *clearly* of statewide importance. Certainly, the issues in this case transcend this particular piece of litigation, and no one can argue that residential foreclosures in this State are not matters of substantial public importance.

The MetLife Defendants cite a string of cases from the Arizona District Court in which decisions have been rendered on similar issues. Plaintiff's point, made in her Motion, is still the same. Lenders and servicers routinely remove these cases to federal court. Unless a Plaintiff is

educated and aware of the right to seek remand, the cases remain in federal court. In her Motion, Plaintiff cited a number of Arizona District Court decisions where the Judge made it clear that state court decisions were missing, upon which to base their rulings. *See* Motion at 7-8. Indeed, when a litigant was aware of the right to remand on state law claims, a United States Magistrate Judge in the District of Arizona ordered that remand, on grounds similar to those for which Plaintiff seeks remand now:

> The Court concludes judicial economy, fairness, comity, the existence of novel issues under Arizona law (whether Defendant MERS was entitled to initiate a non-judicial foreclosure if it was never the holder of the note and was not in actual, physical possession of the note and whether Defendant Deutsche Bank, as trustee under a deed of trust, was in possession of the original promissory note at the time non-judicial foreclosure proceedings were initiated), and the necessity for a court to interpret A.R.S. § 47-3301 and other Arizona foreclosure statutes weigh heavily in favor of this Federal Court declining [] jurisdiction and deferring to the Arizona courts to address the remaining issues in this lawsuit. Remand at this time will, in the long term, reduce litigation costs and eliminate the need to certify novel state-law issues to the Arizona Supreme Court or speculate how the Arizona Supreme Court would rule on the issues.

*Castro v. Executive Trustee Services, LLC,* 2009 WL 1459180 at *3 (D.Ariz.).[6]

The Arizona State Courts have never had an opportunity to speak on many of the issues now before this Court. The Arizona Attorney General has, in the last five days, issued two press releases and conducted several press conferences regarding proposed legislation to change the structure of lender/servicer and borrower relationships in the context of foreclosure and loan modification.[7] Attorney General Goddard announced on October 15, 2010, that a lender which encourages a borrower to default in order to qualify for a loan modification, and then initiates foreclosure, engages in "actual fraud." Plaintiff has asserted claims against the MetLife Defendants on these *very same facts*. *See* Paragraphs 60-64, and Counts Three through Seven.

---

[6] Pursuant to L.R.Civ. 7.1(d)(3), a copy of this case has not been attached to this original Reply. A copy has been attached to the copies sent directly to Magistrate Judge Aspey and the parties in this matter.

[7] Pursuant to L.R.Civ. 7.1(d)(3), copies of these Press Releases and the proposed legislation have not been attached to this original Reply. Copies have been attached to the copies sent directly to Magistrate Judge Aspey and the parties in this matter. Reference may also be made to http://www.azag.gov.

Now, more than ever, the State of Arizona must be given the opportunity to develop her case law and statutory law in the area of residential foreclosure. This is an area of the law with a landscape which will experience a great deal of change and development in the coming months. Plaintiff's claims are *all* state law claims, and include issues of first impression regarding the proof required of a party before that party may be paid pursuant to, or foreclose due to an alleged default on, a promissory note which has been sold, insured, resold, most likely paid off, and resold. These are precisely the issues being determined by elected State officials. Remand to return this all-State law litigation to State Court is the best course of action based on principles of comity, fairness, judicial economy, and novel state-law issues.

### D. The MetLife Defendants are Not Entitled to Their Attorney's Fees.

In a footnote, the MetLife Defendants ask for their fees, claiming that the Motion to Remand is "patently groundless and filed simply to delay." *See* Response at 4 n. 1. The fact that the request is made in a footnote belies the Defendants' belief in its own request. As the Motion to Remand is soundly based on applicable on-point authority, there are no grounds for an award of fees against Plaintiff. The assertion that the Motion is interposed for delay is pure fantasy. A Motion to Dismiss, a Removal to Federal Court, and a Motion to Strike have all been filed by the Defendants; nevertheless the MetLife Defendants would have the Court believe that Plaintiff's Motion is the only one filed for delay. The Defendants' fee request must be denied.

### III. CONCLUSION.

Based on the foregoing, Plaintiff respectfully requests that this Court remand her lawsuit to Maricopa County Superior Court, and thereby abstain from deciding her lawsuit. Arizona District Court decisions confirm that state law on these issues is lacking, and in *Castro*, the Federal Magistrate Judge remanded for state disposition of claims very similar to those asserted here. The claims asserted by Plaintiff confront issues of first impression which are without doubt matters of the utmost statewide significance, which should initially be decided by the state courts, interpreting, and creating, state law.

RESPECTFULLY SUBMITTED this 18th day of October, 2010.

**BARBARA J. FORDE, P.L.C.**

By:   _s/Barbara J. Forde_____
Barbara J. Forde, Esq.
20247 N. 86th Street
Scottsdale, AZ  85255
Plaintiff in Propria Persona

I hereby certify that on October 18, 2010, I electronically transmitted this document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Paul M. Levine
Matthew A. Silverman
Jessica R. Kenney
MCCARTHY HOLTHUS LEVINE
8502 E. Via de Ventura, Suite 200
Scottsdale, AZ  85258
*Attorneys for Defendant Quality Loan Service Corp.*

Christopher M. McNichol
GUST ROSENFELD P.L.C.
One East Washington Street
Suite 1600
Phoenix, AZ  85004
*Attorney for Defendants First Home Loans, a division of First Tennessee Bank National Assoc.; MetLife Home Loans, a division of MetLife Bank, N.A.; The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FH05-FA8; and Mortgage Electronic Registration Systems, Inc.*

s/ Barbara J. Forde, Esq.